## Little v. Commonwealth.

(Decided February 7, 1911.)

### Appeal from Breathitt Circuit Court.

Criminal Law—Withdrawal of Plea of Guilty.—Where a defendant under indictment for murder is induced, by the fear that he will be hung by a mob, to enter a plea of guilty, and in accordance with his plea is found guilty, makes a motion for a new trial in seasonable time the verdict should be set aside and the defendant allowed to enter a plea of not guilty.

HAZELRIGG & HAZELRIGG and HOWARD STAMPER for appellant.

A. F. BIRD, JAMES BREATHITT, Attorney General, and TOM B. McGREGOR, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Reversing.

On the morning of October 20th, 1910, the grand jury of Breathitt county returned into court an indictment against the appellant, Little, charging him with the murder of Mat Crawford, who it appears was killed by Little during the night of October 18th, 1910. Immediately upon the return of the indictment, Little, who was in the county jail of Breathitt county, was brought into court, and the following order made by the court shows what occurred:

"The defendant was brought into open court and informed of the charge herein against him, and said to the court that he had no counsel and was unable to employ one; and the court thereupon appointed T. P. Cope and R. A. Hurst, two regular practicing attorneys at this bar to represent him, who accepted said appointment. The Commonwealth then announced ready for trial, and the

defendant in person and by his attorney announced ready. And thereupon came the following jury (naming them) who were selected and accepted by the Commonwealth and the defendant; and the defendant was then asked for his plea, and by himself in person and by his counsel he waived arraignment and entered a plea of 'guilty' of the charge of willful murder as charged in the indictment. And thereupon the jury was sworn according to law. The Commonwealth by attorney then read to the jury the indictment, and stated the case for the plaintiff, and the plea of the defendant. The court then instructed the jury, and the attorney for the defendant made argument to the jury in behalf of the defendant, and afterwards the attorney for the Commonwealth made argument in behalf of the Commonwealth; and the jury, after hearing the instructions of the court and the arguments of counsel, retired for deliberation of their verdict in custody of James H. Hudson, deputy sheriff, who was sworn as the law directed, and the jury after due deliberation returned into court the following verdict: 'We, the jury, do agree and find the defendant guilty as charged in the indictment, and fix his punishment at death.' Signed by Nando Mann, one of the jurors.''

There is another order, showing that when Little was brought into court upon the return of the indictment that he was advised by the court to employ an attorney to represent him:

''And thereupon the defendant retired to the consultation room with one of his uncles and held consultation with J. P. Adams, one of the attorneys of this bar. They came back and reported that the defendant had not employed any one to defend him, and the defendant stated to the court that he was unable to employ any attorney. Thereupon the court remanded the defendant to jail in the custody of the jailer. Later, and before the adjournment at the noon hour, defendant announced to the court through the jailer the fact that he desired to enter the plea of guilty to the indictment returned against him. Thereupon the court requested Kelly Kash, a practicing attorney, to consult with the defendant and to advise with him, and at the same time requested the said Kash to represent the defendant by appointment. The court did not request the said attorney or any one to advise the defendant to enter the plea of guilty or to inquire of him if he was going to plead guilty. The said Kash reported to the court that he had consulted with

the defendant, and that the said defendant stated to him that he desired to enter a plea of guilty, but the said Kash declined to accept the appointment to represent the defendant. Thereupon, on the afternoon of the same day, the court appointed T. T. Cope and R. A Hurst, two regular practicing attorneys to represent the defendant, and they accepted said appointment. And they and the defendant retired to a room for consultation, and thereafter came into court and Cope acting as spokesman in the presence of the defendant reported that the defendant desired to enter a plea of guilty to the indictment.''

On the same day that the indictment was returned, and the verdict of guilty found, this order was made:

''The defendant being convicted of murder and his punishment fixed at death, and it appearing to the satisfaction of the court that there is danger of mob violence to said prisoner if he should be kept in jail at Jackson; it is therefore ordered that James H. Hudson, deputy sheriff of this county, summon a guard sufficient, to protect said prisoner and convey him to Lexington, and then deliver him to the jailer at the jail in Fayette county, and that the said jailer safely keep said Little in jail until the further orders of this court.''

We have set out these orders at length for the purpose of showing the circumstances under which the conviction was had. From these records, made by the judge who presided at the trial, it is shown that on the same day and within a few hours the defendant was indicted, convicted, and hurried away to a distant county for fear that a mob might hang him.

On October 28th, Little, by his counsel, moved the court to set aside the verdict and grant him a new trial, setting out in substance that he was induced to enter the plea of guilty because he believed and was so advised that it was the only means by which he could escape being taken from the jail by a mob and hung. It is further shown by his uncontradicted affidavit that Crawford shot and attempted to kill him before he killed Crawford, and that he shot Crawford in self-defense. There is also in the record the affidavit of Kelly Kash, the attorney who was requested by the court to advise with appellant while he was in jail and on the day he was tried, in which Kash states that:

''He saw the defendant, Charles Little, on the day he was tried and convicted, and had a conversation with him at the jail in Jackson, Kentucky, where the defendant was confined; which conversation was in the presence

of Grey Haddacks, deputy jailer; that he inquired of the defendant, Little, if it was true that he expected to plead guilty to the charge against him, and stated to said Little that Judge Redwine (the presiding judge) had asked affiant to inquire of Little if he expected to plead guilty; and further stated to the defendant that if he expected to enter this plea of guilty that it would be best to do so before the train left that afternoon for Lexington, and in time to take the train for Lexington, as there had been talk of mob violence."

Various other facts and circumstances are disclosed by other affidavits, but we do not think it necessasry to discuss them. It is sufficient to say that the motion for a new trial was overruled and a judgment entered in accordance with the verdict.

Nor do we think much need be said in support of the proposition that the appellant was entitled to a new trial and should have been permitted upon entering the motion, which he did in seasonable time, to withdraw his plea of guilty and enter a plea of not guilty. The orders made by the trial judge, and the affidavits filed, tell the story of the fearful conditions confronting Little when he entered his plea, and are sufficient in themselves to warrant us in reaching this conclusion. It is true that appellant pleaded guilty to the charge against him. But, what else could he have done? He had suddenly presented before him while confined in the county jail the alternative of being hung by a jury or by a mob. Being advised that he must make a quick choice between the two, he selected the jury as the least objectionable instrument of death. Surely he can not be bound by his election and plea made under these circumstances. To so hold would be a monstrous wrong.

The judgment is reversed, with directions to set aside the judgment, and give the appellant a trial.